UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **United States of America,** | Crim. No. 07-424 (MJD/SRN) |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Ryan Thanh Dinh (01),** | |
| **Defendant.** | |

LeeAnn K. Bell, Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff United States of America

Robert J. Shane, 700 Lumber Exchange Building, 10 South Fifth Street, Minneapolis, Minnesota 55402, for Defendant Ryan Thanh Dinh

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-captioned case comes before the undersigned United States Magistrate Judge on Defendant Ryan Dinh's Motion to Suppress Evidence (Doc. No. 30).[1] This case has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

I.  BACKGROUND

An Indictment was filed on November 14, 2007, charging Defendant Ryan Thanh Dinh and his brother, Defendant Nhan Thanh Dinh, each with one count of conspiracy, one count of manufacturing marijuana, and one count of using and maintaining premises for manufacturing marijuana. This Court held a pretrial motions hearing on March 7, 2008. West Hennepin Public Safety Department Sergeant Todd Boelter and Brooklyn Park Police Officer Max Farrand

---

[1] The Court will address Defendant Ryan Dinh's pending non-dispositive motions in a separate Order.

testified, and the Court received two exhibits into evidence.  Government Exhibit 1 is an application, affidavit, search warrant, receipt, inventory, and return for 10333 Colorado Road in Bloomington, Minnesota.  Government Exhibit 2 is an application, affidavit, search warrant, receipt, inventory, and return for 14655 Chicago Avenue, #5, in Burnsville, Minnesota.

**II.    FACTS**

Sergeant Boelter has been a law enforcement officer for twenty-three years, primarily as a narcotics investigator.  He has participated in more than 350 narcotics investigations and investigated more than forty indoor marijuana growing operations.  He has also participated in the execution of more than twenty search warrants related to indoor marijuana cultivation.

On August 2, 2007, Sergeant Boelter was parked at the Midwest Organic and Hydroponic Supplies store and saw a white Lexus SUV arrive.  Two Asian males, one of whom was Defendant Ryan Dinh, exited the Lexus and went into the store.  A short time later, Sergeant Boelter saw the two men leave the store carrying several black starter trays with plastic domes and approximately 150 large mesh pots.  Based on Sergeant Boelter's experience, Midwest Organic and Hydroponic Supplies is a popular place for individuals to buy equipment and materials to grow marijuana indoors.

Sergeant Boelter followed the Lexus to Home Depot, where the men purchased spray bottles, buckets, gloves, and fluorescent lighting, and then to Menards, where they bought a stepladder.  The Lexus then went to 10108 Florida Circle in Brooklyn Park, Minnesota, and pulled into the garage.  When the garage door was open, Sergeant Boelter saw a gold minivan parked inside.

About thirty minutes later, Sergeant Boelter watched as the Lexus left 10108 Florida Circle.  He could see that the growing supplies had been removed from the vehicle.  Sergeant

Boelter followed the Lexus to Viking Electric, where Defendant Ryan Dinh and his companion bought a large roll of heavy gauge wire. The Lexus then returned to 10108 Florida Circle, and the men took the wire inside. Defendant Ryan Dinh and his companion left the residence again after a few minutes, this time in the gold minivan. Sergeant Boelter followed the minivan to Home Depot, where the two men purchased lumber and pieces of cut plywood. Sergeant Boelter noticed that the plywood had been cut into pieces typically sized to hold two inch by four inch plastic ebb and flow grow trays. The men took the materials to 10108 Florida Circle. Based on this surveillance and his experience, Sergeant Boelter believed that Defendant Ryan Dinh was starting an indoor marijuana growing operation.

 Further investigation revealed that the Lexus was co-owned by Defendant Ryan Dinh and Thuy Nguyen, with an address of 14655 Chicago Avenue, #5, in Burnsville, Minnesota. The gold minivan was registered to Defendant Nhan Dinh. Sergeant Boelter verified that the driver of the Lexus and the minivan on August 2, 2007 was Defendant Ryan Dinh. The address on his driver's license was 10333 Colorado Road in Bloomington, Minnesota. Sergeant Boelter learned that Defendant Ryan Dinh had purchased the Colorado Road house in May 2006, and that Defendant Nhan Dinh had purchased the 10108 Florida Circle property in June 2007.

 For the next three months, Sergeant Boelter continued surveillance of Defendant Ryan Dinh; his two brothers, Defendant Nhan Dinh and Hoai Dinh; and their various properties. The residence at 10108 Florida Circle is a very large, two-story home with a three-stall garage and basement. Sergeant Boelter saw that the blinds and curtains at 10108 Florida Circle were always closed, which in his experience, was consistent with a desire to prevent others from seeing an indoor growing operation. Sergeant Boelter saw that condensation was often present on the south-facing windows, which indicated a high heat, high humidity environment often associated

with indoor marijuana cultivation.  He also saw bright lights shining behind the closed blinds and curtains at night, which he believed were halide lights, often used in indoor growing operations.  In late October 2007, Sergeant Boelter saw solid frost on the roofs of the other houses on Florida Circle, but the frost on the roof of 10108 Florida Circle was shaped in a large V-pattern.  This indicated to Sergeant Boelter that a ventilation system was in place, consistent with indoor growing operations, which causes frost to melt in this shape.

On October 23, 2007, Sergeant Boelter served an administrative subpoena on Xcel Energy for subscriber information and power consumption records for 10108 Florida Circle.  The subscriber was Defendant Nhan Dinh, and the kilowatt use was merely average.  This result did not surprise Sergeant Boelter, though, because he knew of several other indoor marijuana growing operations that had been powered with stolen electricity.  Sergeant Boelter sought similar records for 10333 and 10335 Colorado Road in Bloomington.  The subscriber for 10333 Colorado Road was Defendant Ryan Dinh, and the kilowatt consumption was unusually low compared to the neighboring house.  This indicated to Sergeant Boelter that Defendant Ryan Dinh was stealing electricity.

In late October 2007, Sergeant Boelter increased surveillance on the Dinh brothers and their properties, based on his knowledge of the marijuana growing cycle and his belief that the marijuana would be harvested soon.  On October 29, 2007, surveilling officers saw Defendant Ryan Dinh and Hoai Dinh together at 10108 Florida Circle for the first time, which indicated to Sergeant Boelter that the marijuana harvest was imminent.  Officers followed Hoai Dinh as he drove to a gas station and then to his house at 18500 96th Place North in Maple Grove, Minnesota.  Shortly thereafter, officers saw Defendant Ryan Dinh and another Asian male exit 10108 Florida Circle, each carrying a large cardboard box.  They put the boxes in the back of

4

Defendant Ryan Dinh's Lexus and covered the boxes with a blanket and a pillow. Sergeant Boelter believed that the Dinh brothers had harvested the marijuana and boxed it for transport.

Sergeant Boelter did not personally observe the activity at 10108 Florida Circle on October 29, 2007, because he was at the police station typing the affidavit in support of the search warrants for 10333 Colorado Road and 14655 Chicago Avenue.[2] However, officers at the scene constantly reported to him on the Dinh brothers' activities. After the officers told Sergeant Boelter that Defendant Ryan Dinh had placed the boxes in his Lexus and left 10108 Florida Circle, Sergeant Boelter directed Officer Farrand to stop the Lexus.[3]

Officer Farrand testified that he was dispatched to assist narcotics investigators by stopping the Lexus in his marked squad car. He was told that the basis for the stop was possible marijuana possession. Officer Farrand asked if he needed his own, independent basis to stop the car, and he was told that he did not. Officer Farrand stopped the Lexus and approached the driver's side of the vehicle. He asked Defendant Ryan Dinh for his driver's license, which Defendant Ryan Dinh produced. Officer Farrand then asked Defendant Ryan Dinh where he was going, and Defendant Ryan Dinh tried to reach in his front pants pocket. Officer Farrand told him several times to stop reaching in his pocket, but Defendant Ryan Dinh persisted. Officer Farrand noticed that Defendant Ryan Dinh's hands and voice were shaking, and he also detected a heavy odor of marijuana emanating from the Lexus. Officer Farrand then asked Defendant

---

[2] The same affidavit was submitted in support of both search warrants.

[3] Sergeant Boelter wrote in his affidavit that the Lexus was pulled over based on a reasonable suspicion of possession of marijuana and for the window tint being too dark, which is what an officer on the scene said at the time. Sergeant Boelter testified at the hearing that he later learned that the window tint was not too dark, and that when Defendant Ryan Dinh was pulled over, it was not for the window tint but only for the marijuana possession.

Ryan Dinh to step out of the car.  Concerned that Defendant Ryan Dinh might have a weapon in his pocket, Officer Farrand frisked Defendant Ryan Dinh before placing him in the squad car.  Officer Farrand then asked Defendant Ryan Dinh if there was anything he needed to be aware of, and Defendant Ryan Dinh said that marijuana was in the car.  Officer Farrand asked where in the car, and Defendant Ryan Dinh said it was at his friend's house, which did not make sense to the officer.  Other officers at the scene searched the Lexus and found thirty-seven gallon-sized bags of marijuana, each weighing between one-half and one pound, in the two cardboard boxes.

### III.    DISCUSSION

#### A.    The Traffic Stop

Defendant Ryan Dinh asserts that the stop of the Lexus was unlawful because Officer Farrand did not have a reasonable, articulable suspicion of criminal activity.  Defendant Ryan Dinh concedes that Officer Farrand was entitled to rely on information given to him by other officers or known to the team of officers involved in the investigation.  The Government responds that Officer Farrand had not only a reasonable and articulable suspicion of criminal activity but also probable cause to stop the Lexus.

In Terry v. Ohio, the United States Supreme Court held that a law enforcement officer may stop, briefly detain, and question a person believed to be engaging in criminal activity.  392 U.S. 1, 20-24 (1968).  The officer must have a reasonable and articulable suspicion of criminal activity in order to conduct this type of investigatory detention, id. at 21-22, which is known as a Terry stop.  A reasonable, articulable suspicion means that there are specific and articulable facts, and rational inferences drawn from those facts, reasonably suggesting that criminal activity has occurred or is imminent.  Id. at 21.  If the suspect is in a moving vehicle, a traffic violation is not required in order to justify the stop.  See United States v. Hensley, 469 U.S. 221, 226 (1985).

6

An officer may rely on information known by a team of officers involved in an investigation to provide justification for the stop. United States v. Ortiz-Monroy, 332 F.3d 525, 529 (8th Cir. 2003) (citing United States v. Robinson, 119 F.3d 663, 666-67 (8th Cir. 1997)). "When a team of law enforcement officers is involved in an investigation, the issue is whether all the information known to the team provided 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the investigative stop." United States v. Winters, 491 F.3d 918, 921 (8th Cir. 2007) (quoting Robinson, 119 F.3d at 666-67).

In the present case, the Court finds that the collective knowledge of the officers investigating Defendant Ryan Dinh established, at minimum, a reasonable and articulable suspicion of criminal activity. This bank of knowledge began when Sergeant Boelter saw Defendant Ryan Dinh purchase supplies typically used to grow marijuana indoors. He noticed that Defendant Ryan Dinh purchased supplies from several different stores, and one reasonable inference from this activity is that Defendant Ryan Dinh was attempting to avoid suspicion. Surveillance of 10108 Florida Circle revealed further evidence of an indoor marijuana growing operation: constantly closed blinds, atypical frost patterns on the roof, and bright lights at night. It is true that these facts, viewed in isolation, could be considered innocent. However, when viewed through the lens of law enforcement, particularly in light of Sergeant Boelter's extensive experience investigating indoor marijuana growing operations, the information gives rise to a reasonable suspicion of criminal activity. See United States v. Maltais, 403 F.3d 550, 555 (8th Cir. 2005) (viewing apparently innocent facts in light of context and the officer's experience and finding "that the totality of the circumstances gave rise to a reasonable suspicion"). This suspicion was heightened by Sergeant Boelter's knowledge of the marijuana growth cycle and the Dinh brothers' activities on October 29, 2007, when they removed two large boxes from

10108 Florida Circle and concealed the boxes in the Lexus by covering them with a blanket and pillow. The Court concludes that the totality of the circumstances in this case established a reasonable suspicion that the Dinh brothers had grown and harvested marijuana, and were in the process of transporting the marijuana in the Lexus.

The knowledge of Sergeant Boelter and other members of the narcotics investigation team can be imputed to Officer Farrand, who became a member of the team when he was dispatched to stop the Lexus in his marked squad car. Application of the collective knowledge theory "requires some degree of communication between the officer who possesses the incriminating knowledge and the officer who does not." United States v. Banks, 514 F.3d 769, 776 (8th Cir. 2008). This requirement was satisfied when the narcotics investigators gave Officer Farrand a description of the car and told him that they believed marijuana was inside.

When Officer Farrand was standing next to the car, he smelled a heavy odor of marijuana emanating from it and noticed that Defendant Ryan Dinh was acting nervously. At this point, Officer Farrand had probable cause to believe that Defendant Ryan Dinh was transporting marijuana and that evidence of criminal activity would be located in the Lexus. See United States v. Lindsey, 158 F. App'x 757, 758 (8th Cir. 2005) (finding probable cause to search a vehicle based on the odor of marijuana, the driver's glassy eyes, the presence of several eyeglasses cases, and the driver's nervous behavior); United States v. Gerard, 362 F.3d 484, 489 (8th Cir. 2004) (noting that "the odor of an illegal drug can be highly probative in establishing probable cause for a search"). Officer Farrand was therefore entitled to search the Lexus and to arrest Defendant Ryan Dinh.

**B.     The Search Warrants**

Defendant Ryan Dinh moves to suppress the physical evidence seized from the 14655

Chicago Avenue and 10333 Colorado Road.  He argues that the information about the traffic stop must be redacted from Sergeant Boelter's affidavit because the traffic stop was unlawful, and once redacted, the affidavits do not establish probable cause.  The Court has concluded, however, that the traffic stop was lawful, and therefore, Sergeant Boelter properly included this information in his affidavit.

When an issuing court relies solely on an affidavit to determine whether probable cause exists for a warrant, the reviewing court may consider "only that information which is found within the four corners of the affidavit . . . in determining the existence of probable cause." United States v. Leichtling, 684 F.2d 553, 555 (8th Cir. 1982).  Upon reviewing the entire affidavit in the present case, the Court finds that it established abundant probable cause for the search warrants.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Ryan Thanh Dinh's Motion to Suppress Evidence (Doc. No. 30) be **DENIED**.


Dated: March 27, 2008

                    s/ Susan Richard Nelson
                    SUSAN RICHARD NELSON
                    United States Magistrate Judge


Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 11, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation

does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.